IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AINSTEIN AI, INC.,

　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　Case No. 23-2166-DDC-TJJ

ADAC PLASTICS, INC.,

　　　　　Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on defendant ADAC Plastics, Inc.'s Motion to Transfer Venue Based on Agreement to Arbitrate (Doc. 16). Plaintiff Ainstein AI, Inc. has filed a memorandum opposing the motion (Doc. 26), defendant has filed its Reply (Doc. 34), and plaintiff filed its Sur-Reply (Doc. 44). For reasons explained in the following pages, the court grants defendant's Motion to Transfer (Doc. 16).

**I.     Background and Operative Facts**

The Tenth Circuit has prescribed a process for district courts to use when they decide whether to compel arbitration. It resembles the summary judgment analysis. *See BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). Under this rubric, the court takes "'a quick look at the case'" to determine whether "'material disputes of fact exist'" so that it "may 'decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration.'" *Id.* (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)). The court follows this approach here.

Importantly, the parties agree that they mutually consented to the LLC Agreement. But they disagree about the meaning of the words in that contract. Finding no dispute about the facts

that matter to the arbitration issue, the court elects "to decide the arbitration question as a matter of law through motions practice and view[s] the facts in the light most favorable to" plaintiff since it's the "party opposing arbitration." *Howard*, 748 F.3d at 978.

The operative facts here come from plaintiff's Amended Complaint (Doc. 25) and the LLC Agreement it places at issue (Doc. 25-1), which plaintiff attached to its original Complaint.

### A. The Parties

Plaintiff Ainstein AI, Inc. is a Delaware corporation with its principal place of business in Kansas. Doc. 25 at 1 (Am. Compl. ¶ 1). Plaintiff develops commercial radar technology for manufacturing and industry use. *Id.* at 2 (Am. Compl. ¶ 8). Defendant ADAC Plastics, Inc. is a Michigan corporation with its principal place of business in Michigan. *Id.* at 1 (Am. Compl. ¶ 2). Defendant supplies mechatronic vehicle access systems to major automotive brands throughout the world. *Id.* at 3 (Am. Compl. ¶ 11).

In July 2020, defendant retained plaintiff as an independent contractor for a project aiming to develop a radar proximity sensor for vehicles. *Id.* at 3 (Am. Compl. ¶ 13). Based on that work, defendant expressed interest in further collaborating through a joint venture with plaintiff to develop other radar-based sensors for vehicles. *Id.* at 3 (Am. Compl. ¶¶ 14–15). While exploring this joint venture, defendant retained an advisory firm to determine the fair market value of plaintiff's intellectual property. *Id.* at 3–4 (Am. Compl. ¶ 17). This firm determined the fair market value, appraising it as worth several million dollars. *Id.*

### B. The LLC Agreement

On June 1, 2021, plaintiff and defendant finalized a Limited Liability Company Agreement (LLC Agreement), forming a Delaware limited liability company called RADAC, LLC (RADAC). *Id.* at 4 (Am. Compl. ¶ 19); Doc. 25-1 at 3. RADAC focused on "development and commercialization of radar sensor solutions to be used in all applications in the global light

2

vehicle and global commercial vehicle markets" and all related activities. Doc. 25-1 at 13 (LLC Agreement § 2.05(a)).

This LLC Agreement contains an "Arbitration" provision. It provides:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, will be settled by arbitration before a panel of three (3) arbitrators in Detroit, Michigan within forty-five (45) days after the request for arbitration is made, administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

*Id.* at 47 (LLC Agreement § 13.12). The Agreement also contains an "Equitable Remedies" provision. It provides:

> Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

*Id.* at 47–48 (LLC Agreement § 13.14).

### C. The Current Lawsuit

In short form, plaintiff's Amended Complaint alleges defendant misappropriated trade secrets under Kansas (Count I) and federal (Count II) laws, engaged in unfair competition (Count III), and breached the LLC Agreement (Count IV). Doc. 25 at 18–28 (Am. Compl. ¶¶ 76–126). Plaintiff invokes the court's subject matter jurisdiction, asserting both diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331 because the Complaint seeks relief under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836. The court concludes that it possesses subject matter jurisdiction for both reasons asserted by plaintiff.

3

Plaintiff also has filed emergency motions for a preliminary injunction (Doc. 3) and expedited discovery (Doc 5). Shortly after plaintiff filed this action, defendant filed a motion asking the court to transfer the action to the Eastern District of Michigan, where that court—according to defendant—should compel arbitration under the arbitration provision in the LLC Agreement. *See* Doc. 17. Given defendant's unequivocal election to invoke the LLC Agreement's arbitration provision, the court must decide that question before it turns to any other. *See Conn. Gen. Life Ins. v. CST Indus., Inc.*, No. CIV.A. 05-2029-KHV, 2005 WL 1398660, at *2 (D. Kan. June 14, 2005) ("Federal policy favors arbitration agreements and requires that the Court rigorously enforce them." (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (further citations omitted)).

## II.     Legal Standard for Compelling Arbitration

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–402, manifests Congress's intent to treat arbitration agreements as a matter of contract and require federal courts to enforce those agreements according to their terms. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citations omitted). The Supreme Court has emphasized that the threshold question of arbitrability—"that is, whether [the] arbitration agreement applies to the particular dispute" at issue—"is itself a question of contract." *Id.* at 527.

When parties dispute an arbitration agreement's applicability, the party moving to compel arbitration bears a burden like the one faced by a summary judgment movant. Under this approach, the proponent of arbitration must make an initial showing of a valid arbitration agreement. *BOSC, Inc.*, 853 F.3d at 1177 (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). If the moving party satisfies this initial requirement, the burden shifts. The non-moving party then must demonstrate a genuine issue of material fact whether the parties have formed an agreement to arbitrate. *Id.* (first citing *Hancock*, 701 F.3d at 1261; then citing

4

§ 4 of the FAA, 9 U.S.C. § 4). Section 4's purpose "is 'to decide quickly—summarily—the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute.'" *Id.* (quoting *Howard*, 748 F.3d at 977). The Supreme Court has explained that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 530.

A court mustn't decline to enforce an arbitration clause unless it determines "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1147–48 (10th Cir. 2014) (quotation cleaned up). This presumption favoring enforcement "is particularly applicable where . . . there is a broad arbitration clause. In such cases, in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 1148 (quotation cleaned up).

### III. Analysis

Under the Federal Arbitration Act and Supreme Court precedent, "the question of who decides arbitrability is itself a question of contract." *Henry Schein*, 139 S. Ct. at 527 (citation omitted). Whether a particular dispute is arbitrable "'depends upon whether the parties agreed to arbitrate that dispute[.]'" *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). And "'the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter.'" *Id.* at 1280 (quoting *First Options*, 514 U.S. at 943 (further citations omitted)); *see also Henry Schein*, 139 S. Ct. at 529 (holding that arbitrator may decide "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement

5

covers a particular controversy" where parties have agreed to assign that question to an arbitrator (quotation cleaned up)).[1]

Since "parties can agree to arbitrate arbitrability, . . . questions of arbitrability encompass two types of disputes[.]" *Belnap*, 844 F.3d at 1280. *First*, parties may dispute whether a particular claim falls within the scope of an arbitration agreement. *Id.* (citing *First Options*, 514 U.S. at 944–45). When confronted with this kind of disagreement, the court should resolve "'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *Id.* at 1280–81 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). *Second*, parties may have "threshold" disputes about who decides whether a particular claim is arbitrable. *Id.* at 1280 (citing *First Options*, 514 U.S. at 942). This type of dispute pushes the court in the opposite direction, *i.e.*, courts can't assume that the parties have agreed to arbitrate arbitrability "unless there is clear and unmistakable evidence" of that intent. *Id.* at 1281 (quoting *First Options*, 514 U.S. at 944 (quotation cleaned up)). Importantly, the court must decide this second question—*who* decides arbitrability—before it addresses the question *whether* a particular claim is arbitrable. *Id.* (citing *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)); *see also Henry Schein*, 139 S. Ct. at 530 ("[I]f a valid agreement

---

[1] In *Henry Schein*, the Supreme Court resolved a Circuit split. On one side of this split, the Fourth, Fifth, Sixth, and Federal Circuits had held that even when the parties had delegated "the threshold arbitrability question to an arbitrator, . . . the court rather than an arbitrator should decide the threshold arbitrability question if, under the contract, the argument for arbitration is wholly groundless." 139 S. Ct. at 529. Other Circuits—including ours—had held to the contrary. *Id.* (first citing *Belnap*, 844 F.3d 1272; then citing *Jones v. Waffle House, Inc.*, 866 F.3d 1257 (11th Cir. 2017) (further citations omitted)). *Henry Schein* held "that the 'wholly groundless' exception is inconsistent with the text of the [Federal Arbitration] Act" and Supreme Court precedent. *Id.* Because our Circuit had never adopted the "wholly groundless" exception, the Supreme Court's holding in *Henry Schein* aligns with earlier Tenth Circuit arbitrability rulings. *See Belnap*, 844 F.3d at 1286 (declining to adopt the "wholly groundless" exception because it "appears to be in tension with language of the Supreme Court's arbitration decisions").

exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). The court thus starts its analysis with the second question.

Here, no one disputes that the LLC Agreement contains a valid arbitration provision requiring the parties to arbitrate, at the very least, some claims. Instead, the parties disagree whether their contract's arbitration provision applies to the claims plaintiff has chosen to assert here. Defendant contends that the arbitration provision is a broad one, as it requires the parties to arbitrate "[a]ny controversy or claim arising out of or relating to" the LLC Agreement or its alleged breach. Doc. 25-1 at 47 (LLC Agreement § 13.12).

Under our Circuit's precedent, "incorporation of the AAA Rules [in an arbitration agreement] provides clear and unmistakable evidence that the parties intended to delegate matters of arbitrability to the arbitrator." *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1248 (10th Cir. 2018). Here, no one disagrees that § 13.12 of the LLC Agreement mandates the parties to present claims to arbitration "administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules," effectively incorporating the AAA Rules. Doc. 25-1 at 47 (LLC Agreement § 13.12). AAA Rule R-7(a) provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." R-7(a), AAA Commercial Arbitration Rules, https://www.adr.org/sites/default/files/CommercialRules_Web_0.pdf (last visited May 15, 2023). So, the court "may not decide the arbitrability issue[,]" *Henry Schein*, 139 S. Ct. at 530, unless the Agreement also contains "the most forceful evidence of a purpose to exclude [a particular] claim from arbitration[.]" *Sanchez*, 762 F.3d at 1148 (quotation cleaned up).

7

Plaintiff professes to find such forceful evidence in the LLC Agreement itself. It contends that § 13.14 of that contract cabins the reach of the arbitration provision by adopting a carve out for the equitable relief sought by the Amended Complaint. Specifically, plaintiff argues that the equitable remedies provision "contains two independent clauses . . . that must be interpreted discretely." Doc. 26 at 5. The first clause, plaintiff contends, contains both parties' acknowledgement that a breach of the LLC Agreement would produce irreparable harm, *i.e.*, harm that money damages couldn't remedy. *Id.* Next, plaintiff contends, § 13.14's second clause imposes a "carve-out" from the arbitration provision for non-monetary damages. Plaintiff identifies the language supporting this interpretation as follows: "Each party . . . hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto shall . . . be entitled to equitable relief . . . from a court of competent jurisdiction[.]" *Id.* at 11. Plaintiff argues that these words establish "that a party may seek and obtain equitable relief (including an injunction and specific performance) from a court of competent jurisdiction in the event of a breach or a threatened breach by another party." *Id.*

The court doesn't share plaintiff's interpretation of § 13.14 and the last ellipsis in plaintiff's rendition of that provision reveals why. In its entirety, the second clause of § 13.14 memorializes each party agreement:

> that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

Doc. 25-1 at 47–48 (LLC Agreement § 13.14). This language provides that either party to the contract can seek equitable relief, including any relief "that *may be available from* a court of competent jurisdiction[.]" *Id.* (emphasis added). When viewed in their entirety, all the words in

this provision reveal that the final prepositional phrase—"from a court of competent jurisdiction"—is modified by the "may be available" phrase directly preceding it.

Given its full context, this second half of the operative clause in § 13.14 does no more than the first half of this provision does: acknowledge that the parties may seek the sort of equitable relief that they could pursue in a courthouse. In this sense, the court concludes, § 13.14 of the LLC Agreement doesn't carve out an exception to the agreement's general rule of arbitrability for claims seeking equitable relief. Equitable claims stand on the same footing as other disputes encompassed within the arbitration provision in § 13.12.[2]

Plaintiff separately argues that other parts of the LLC Agreement "contemplate[ ] *judicial* proceedings—not just arbitration." Doc. 44 at 2. This argument cites § 13.13's waiver of the right to a jury trial as an example. Plaintiff reasons that "[t]his waiver would be redundant if the Arbitration Provision was all-encompassing, since arbitrations have no jury." *Id.* at 2–3. This is an interesting argument, but it can't carry all the weight plaintiff assigns to it because it doesn't consider the various purposes that § 13.13 might serve. Contracts often contemplate and address multiple layers of future contingencies. Nothing in the LLC Agreement requires defendant to compel arbitration. *See In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016) (recognizing that party may "waive its right to arbitration if it intentionally relinquishes or abandons that right"); *BOSC, Inc.*, 853 F.3d at 1170 (recognizing ability to relinquish arbitration right (citing *id.*)). So, for example, defendant could have elected to forego its arbitration right and, instead, left the current case here for this court to resolve. But

---

[2]  Plaintiff premises many of its arguments on the notion that the LLC Agreement carves out an exception for claims seeking equitable relief. *See, e.g.*, Doc. 44 at 2 (first citing *Dish Network*, 900 F.3d 1240; then citing *Torgerson v. LCC Int'l, Inc.*, No. 16-2495-DDC-TJJ, 2020 WL 108706 (D. Kan. Jan. 9, 2020)). But this Order's conclusion that § 13.14 isn't a carve out nullifies the viability of these arguments.

even in that situation, defendant might prefer to require plaintiff to forego a jury trial. In short, nothing about the provision waiving the right to a jury trial suggests that the agreement's arbitration provision is a narrow one, or that § 13.14 exempts any claims from it.

Having concluded that the LLC Agreement doesn't carve out an exception for claims seeking equitable relief, the court returns to the arbitrability question. As our Circuit has emphasized, the question about "'who has the primary power to decide arbitrability'" turns on "'what the parties agreed about *that* matter.'" *Belnap*, 844 F.3d at 1280 (citing *First Options*, 514 U.S. at 943 (emphasis in original, quotation otherwise cleaned up)). When it decides this issue, the court applies the "three-part test" ordinarily applied to determine "whether an issue falls within the scope of an arbitration clause." *Sanchez*, 762 F.3d at 1146 (citing *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)). That test provides:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (quoting *Cummings*, 404 F.3d at 1261 (quotation cleaned up)).

Applying the *Cummings* approach to this case's LLC Agreement, the court must determine, first, whether the arbitration provision in § 13.12 is broad or narrow. Our Circuit has held that an arbitration clause "stating that '[a]ny dispute, difference or unresolved question between' the parties must be arbitrated" classifies as a sufficiently broad arbitration clause since it "contains no limiting language, either restricting arbitration to any specific disputes or to the agreement itself." *Id.* Section 13.12 of the LLC Agreement is unrestricted, mandating

arbitration for "[a]ny controversy or claim *arising out of or relating to this Agreement*, or the breach thereof[.]" Doc. 25-1 at 47 (LLC Agreement § 13.12) (emphasis added). Section 13.12 adopts a broad arbitration agreement.

The court needn't apply the second step of the *Cummings* test since the provision at issue here isn't a narrow one. So, the court moves to the third step, applying a presumption of arbitrability "if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Sanchez*, 762 F.3d at 1146 (citing *Cummings*, 404 F.3d at 1261 (quotation cleaned up)). And since "the question of who decides arbitrability is itself a question of contract[,]" the dispute on this front falls within this presumption of arbitrability. *Henry Schein*, 139 S. Ct. at 527 (citation omitted). In sum, *Cummings* favors sending to the arbitrators the dispute over which claims are within the reach of the parties' agreement to arbitrate.[3]

## IV. Transferring the Action

Under the FAA, a party seeking to enforce a written arbitration agreement "may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in

---

3   Before moving on to other issues, the court pauses here to differentiate between the issues decided in this Order and the issues it doesn't decide.

**What this Order Decides:** Circuit precedent requires the court to decide whether it can conclude "with positive assurance" that the arbitration clause in § 13.12 "is not susceptible of an interpretation that covers the asserted dispute." *Sanchez*, 762 F.3d at 1147–48. Unable to make such a finding here with the requisite "positive assurance[,]" the court declines to confiscate disputes about the scope of the arbitration clause for the court. *Id.*

**What this Order Doesn't Decide:** In contrast, this Order doesn't decide that question in a final or conclusive way. Instead, the court leaves it to the arbitrators to define the scope of the arbitrators' jurisdiction. *See Belnap*, 844 F.3d at 1280. If the arbitrators conclude the parties agreed that the panel will decide this threshold question, *i.e.*, who decides which claims are arbitrable, the court presumes the arbitrators will answer it. But should the arbitrators conclude that the parties intended for the court to answer this threshold jurisdictional decision, nothing in this Order precludes the parties from returning to court to litigate it.

such agreement." 9 U.S.C. § 4.  After hearing the parties' arguments, "and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

The court has considered the parties' arguments here and determined the LLC Agreement's arbitrability issue must go to an arbitration panel.  But our Circuit has limited the court's authority to compel arbitration outside its district.  *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005) (holding that where "parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under" the FAA).  The arbitration provision here requires that any claims brought by the parties are "settled by arbitration before a panel of three (3) arbitrators in Detroit, Michigan[.]"  Doc. 25-1 at 47 (LLC Agreement § 13.12).  Detroit isn't within the District of Kansas, meaning the court can't compel arbitration.  Only the United States District Court for the Eastern District of Michigan may do so.

Under similar circumstances, this court has transferred cases to a district with authority to compel arbitration so that it may "further the parties' intent as expressed in their agreements." *Computerized Assessments & Learning, LLC v. Data Recognition Corp.*, No. 09-2400-KHV, 2010 WL 11561399, at *8 (D. Kan. Mar. 19, 2010); *see also Finucane Enters., Inc. v. Arizant Healthcare, Inc.*, No. 05-CV-2163 JWL, 2005 WL 8160523, at *4 (D. Kan. Aug. 25, 2005) (holding that "the interests of justice are best served by transferring this case to Minnesota"). Section 4 of the FAA directs courts "to decide quickly—summarily—the proper venue for the case . . . so the parties can get on with the merits of their dispute." *Howard*, 748 F.3d at 977. Here, the court has decided it isn't the proper venue to compel arbitration.  But the court

possesses authority under 28 U.S.C. § 1406(a), "in the interest of justice, [to] transfer such case to any district or division in which it could have been brought" to cure a defect in venue. *See Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 580 (D. Kan. 2000) (citing § 1406(a) to enforce contractual provisions). Thus, because the FAA and our Circuit prohibit the court from compelling arbitration under the LLC Agreement's arbitration provision, the court transfers this action to the United States District Court for the Eastern District of Michigan.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Transfer Venue Based on Agreement to Arbitrate (Doc. 16) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of the Court is directed to take all necessary steps to transfer this action to the United States Court for the Eastern District of Michigan.

Because of this Order's rulings about arbitrability and the LLC Agreement's broad arbitration provision, the court declines to decide plaintiff's pending Emergency Motion for Preliminary Injunction (Doc. 3).

**IT IS SO ORDERED.**

**Dated this 30th day of May, 2023, at Kansas City, Kansas.**

                                                  **s/ Daniel D. Crabtree**
                                                  **Daniel D. Crabtree**
                                                  **United States District Judge**